UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAN DIEGO COUNTY EMPLOYEES RETIREMENT ASSOCIATION,<br><br>Plaintiff,<br><br>-against-<br><br>NICHOLAS M. MAOUNIS, CHARLES H. WINKLER, ROBERT W. JONES, BRIAN HUNTER, and AMARANTH ADVISORS, LLC,<br><br>Defendants. | 07 Civ. 2618 (DAB)<br><br>**ORAL ARGUMENT REQUESTED** |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT BRIAN HUNTER'S MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

Of Counsel:

William J. McSherry, Jr. (WM1194)
Steven D. Greenblatt (SG5105)
Christina N. Burgos (CB5579)

CROWELL & MORING LLP
153 East 53rd Street
New York, New York 10022
Tel. No.:  212-223-4000

*Attorneys for Plaintiff San Diego County Employees Retirement Association*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ......................................................................... 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ........................... 1

ARGUMENT ................................................................................................... 3

I.   SDCERA HAS MADE A PRIMA FACIE SHOWING THAT THIS COURT
     HAS PERSONAL JURISDICTION OVER HUNTER ................................. 4

     A.   C.P.L.R. § 301 Permits the Exercise of General Jurisdiction Over Hunter .......... 5

     B.   Hunter's Trading Practices on the NYMEX Subject Him to "Long Arm"
          Personal Jurisdiction in New York under C.P.L.R. § 302(a) ............................ 9

II.  THE EXERCISE OF JURISDICTION OVER HUNTER DOES NOT VIOLATE
     FEDERAL PRINCIPLES OF DUE PROCESS .......................................... 12

     A.   Hunter has Minimum Contacts with New York ................................ 12

     B.   It Would Be Reasonable and Fair to Exercise Jurisdiction Over Hunter
          Because Traditional Notions of Fair Play and Substantial Justice Have
          Been Met ............................................................................................ 15

          1.   The exercise of jurisdiction in this case would impose only
               minimal burdens on Hunter. ................................................... 15

          2.   New York has significant interests in this case. ...................... 16

          3.   SDCERA must be allowed to proceed against Hunter if it is to be
               made whole for the injuries it suffered due to his conduct. .......... 17

          4.   Efficient resolution of the subject matter of SDCERA's suit can
               only be accomplished by including Hunter in this proceeding. ......... 18

          5.   The shared interests of the States favor the Court's exercise of
               Jurisdiction over Hunter in this proceeding. ........................... 18

III. AT A MINIMUM, SDCERA IS ENTITLED TO JURISDICTIONAL
     DISCOVERY TO SUPPORT THE THRESHOLD JURISDICTIONAL
     SHOWING IT HAS MADE ................................................................... 19

     CONCLUSION ......................................................................................... 20

## TABLE OF AUTHORITIES

### Cases

77738 Ontario Ltd. v. Lencore Acoustics Corp., 142 F.Supp.2d 309
(E.D.N.Y. 2001) ................................................................................ 11

ABCKO Indus. Inc. v. Lennon, 377 N.Y.S.2d 362 (N.Y. Sup. Ct. 1975).................................... 7

Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102 (1987).....................................12, 15, 19

Ayyash v. Bank Al-Madina, 2006 WL 587342, No. 02 Civ. 9201
(S.D.N.Y. March 9, 2006)................................................................... 19

Bryant v. Finnish Nat'l Airline, 15 N.Y.2d 426, 208 N.E.2d 439 (N.Y. 1965) ............................ 5

Calle Gracey v. Amaranth Advisors, LLC et. al., pending S.D.N.Y., Index No. 07-
cv-06377-SAS) .................................................................................. 10

CIT, Inc. v. 170 Willow St. Assocs., No. 93 Civ. 1201 CSH, 1997 WL 528163
(S.D.N.Y. Aug. 26, 1997) .................................................................... 9

Curley v. Brignoli, Curley & Roberts Assocs., 915 F.2d 81 (2d Cir.1990),
cert. denied, 499 U.S. 955, 111 S.Ct. 1430, 113 L.Ed.2d 484 (1991)...................... 9

Donoghue v. Dicut, Inc., No. 01 Civ. 10194(NRB), 2002 WL 1728539
(S.D.N.Y. July 24, 2002) ..................................................................... 16

FCNB Spiegel Inc. v. Dimmick, 619 N.Y.S.2d 935 (N.Y. Civ. Ct. 1995)..................................... 5

Global Intellicom, Inc. v. Thomson Kernaghan & Co., No. 99 Civ. 342(DLC),
1999 WL 544708 (S.D.N.Y. July 27, 1999) .......................................... 14

Gregoris Motors v. Nissan Motor Corp. in USA ., 630 F.Supp. 902 (E.D.N.Y.
1986)................................................................................................. 6

Grosser v. Commodity Exch., Inc., 639 F.Supp. 1293 (S.D.N.Y. 1986) ............................... 5, 13

Hunter v. Deutsche Bank, pending New York Supreme Court New York County,
Index No. 602791/2004 .................................................................... 3, 9

Hunter v. Federal Energy Regulatory Comm'n, pending in District Court D.C., 07
Civ 1307 (RJL) ................................................................................... 3

In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204 (2d Cir. 2003) ................................... 19

Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945)................................................................. 6, 12

Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460 (1988) ....................................................... 7, 13

Laufer v. Ostrow, 55 N.Y.2d 305 (N.Y. 1982)......................................................................... 5, 7

McGowan v. Smith, 52 N.Y.2d 268 (1981)...........................................................................10, 11

Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560 (2d Cir. 1996)...................... 6

Motown Record Co., L.P. v. iMesh.Com, Inc., No. 03 Civ. 7339(PKC),
2004 WL 503720 (S.D.N.Y. March 12, 2004)...................................... 8

<u>Packer v. TDI Sys., Inc.</u>, 959 F. Supp. 192 (S.D.N.Y. 1997) ...........................................4, 13, 14

<u>PC Com, Inc. v. Proteon, Inc.</u>, 906 F. Supp. 894 (S.D.N.Y. 1995) ...................................... 4, 12

<u>S.E.C. v. Euro Sec. Fund</u>, No. 98 Civ 7347(DLC), 1999 WL 76801
    (S.D.N.Y. Feb. 12, 1999) ....................................................................................... 5, 7

<u>S.E.C. v. Softpoint, Inc.</u>, No. 95 Civ 2951 GEL, 2001 WL 43611
    (S.D.N.Y. Jan. 18, 2001) ........................................................................................ 16

<u>Schottenstein v. Schottenstein</u>, No. 04 Civ 5851(SAS), 2004 WL 2534155
    (S.D.N.Y. 2004) ..................................................................................................... 8

<u>Solengo Capital Advisors ULC v. Dealbreaker</u>, pending in S.D.N.Y.,
    Index No. 1:07-cv-02657-DLC ........................................................................... 3, 9

<u>Strategem Dev. Corp. v. Heron Int'l N.V.</u>, 153 F.R.D. 535 (S.D.N.Y. 1994)............................ 19

<u>Tauza v. Susquehanna Coal, Co.</u>, 220 N.Y. 259 (1917).................................................... 5

<u>U.S. Commodity Futures Trading Comm'n v. Amaranth Advisors, L.L.C.</u>,
    <u>Amaranth Advisors (Calgary) ULC, and Brian Hunter</u>, pending Southern
    District of New York, Case No. 07 Civ 6682 ...................................... 9, 13, 14, 16

<u>Wiwa v. Royal Dutch Petroleum Co.</u>, 226 F.3d 88 (2d Cir. 2000) ................................. 15

<u>World-Wide Volkswaggen Corp. v. Woodson</u>, 444 U.S. 286 (1980)..................................12, 14

## **Statutes**

7 U.S.C. §2................................................................................................................. 16

15 U.S.C. § 78aa....................................................................................................... 17

C.P.L.R. § 301 ..................................................................................................... 5, 9, 14

C.P.L.R. § 302 ..................................................................................................9, 10, 11, 14

Fed. R. Civ. P. Rule 12(b)(2) ............................................................................. 3, 4, 20

## PRELIMINARY STATEMENT

Plaintiff, San Diego County Employees Retirement Association ("SDCERA" or "Plaintiff"), submits this memorandum of law in opposition to defendant, Brian Hunter's ("Hunter") motion to dismiss SDCERA's Complaint on the grounds of lack of personal jurisdiction pursuant to Rule 12(b)(2).  Despite Hunter's contentions to the contrary, SDCERA has alleged sufficient facts in its Complaint to make a prima facie showing that this Court can properly assert personal jurisdiction over Hunter.  Hunter has had strong personal and business connections to the State of New York for at least the better part of the past decade, including property ownership and employment.  Moreover, Hunter has purposefully availed himself on numerous occasions of business opportunities in New York, not the least of which was the grossly negligent natural gas futures trading scheme which caused Amaranth Partners L.L.C. (the "Fund") to collapse, and which forms a factual predicate to SDCERA's Complaint.  Given these contacts, and having himself commenced (or directed the commencement of) at least two pending lawsuits in New York courts (including the Southern District), it is disingenuous for Hunter to challenge this Court's personal jurisdiction over him in this case.  The exercise of jurisdiction over Hunter is consistent with both New York law and Constitutional due process, and Hunter's motion should be denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

Effective September 1, 2005, SDCERA invested $175 million in the Fund, a self-proclaimed multi-strategy diversified hedge fund.  Compl. ¶¶  2, 4, 33-35, 44.  Hunter joined

---

[1] The facts are more fully detailed in the Complaint and Plaintiff's Memorandum in Opposition to Motion to Dismiss on the remaining issues against Hunter and all other defendants filed herewith.  A copy of the Complaint is attached to the Burgos Aff. as Exhibit L.

Amaranth Advisors L.L.C. ("Advisors"), the Fund's managing member, in 2004, as a natural gas trader.  Compl ¶ 46.  Hunter was at various times, a trader, co-Portfolio Manager, or Portfolio Manager at Advisors.   Compl. ¶ 28.  He was given substantial control over the natural gas commodity trades that occurred in the Fund and took such enormous, leveraged spread positions in the natural gas markets that the Fund's own trading volume influenced spreads and prices in these markets.  Compl. ¶ 7.  Hunter is believed to have received a $100 million bonus for 2005 based on his trading activity.  Compl. ¶ 7.  In 2006, Hunter received 15% of gains attributable to his trading, so that he participated side by side with Advisors on each trade.  Compl. ¶ 57.

Hunter has multiple New York bank accounts and has been linked to several residences in New York.   Beyond that, he regularly traded on the New York Mercantile Exchange ("NYMEX"), and did so in particular, when engaging in the conduct alleged in the Complaint to be grossly negligent and in furtherance of the other Defendants' breaches of their fiduciary duties.  Compl. ¶ 21.  NYMEX is the world's largest physical commodity futures exchange and it is located in New York City.  See http://www.nymex.com.   Compl. ¶¶ 21, 63, and 83.  Hunter's trading activity involved hundreds of millions of dollars of energy trades transacted, cleared (at JPMorgan Chase in New York), and paid for in the Southern District of New York.  Compl. ¶ 21.

Hunter was hired by Advisors despite a troubling past with his former employer, Deutsche Bank.  Compl. ¶ 46.  Hunter worked (and apparently lived) in New York City while at Deutsche Bank.  Hunter began working for Deutsche Bank in 2001 and during a single week in December 2003, his trading team lost $51 million, eliminating more than 70% of Deutsche Bank's energy trading profits for that year.  Compl. ¶ 46.  Upon receiving no bonus and a demotion, Hunter sued Deutsche Bank in New York state court in 2004 for constructively firing

him and seeking, <u>inter alia</u>, the bonus compensation allegedly due to him. Compl. ¶ 46. That case is currently pending in New York and has been vigorously litigated by Hunter and his attorneys. <u>See Hunter v. Deutsche Bank</u>, pending New York Supreme Court New York County, Index No. 602791/2004.

Despite the losses incurred by the Fund upon its collapse, Hunter reportedly made millions in compensation and bonuses during his time at Advisors. Compl. ¶¶ 7, 57. No doubt some of those gains have been rolled into Hunter's new fund named Solengo Capital Advisors ULC ("Solengo"). <u>See</u> Supplemental Declaration of Brian Hunter in Support of Plaintiff's Motion for a Preliminary Injunction dated August 3, 2007 ¶ 5 ("I [Hunter] maintain a 60% ownership interest in [Solengo]" "I [Hunter] have invested the bulk of the funds required by [Solengo] up to this point, which has exceeded US $1.7 million…"), <u>Hunter v. Federal Energy Regulatory Comm'n</u>, pending in District Court D.C., 07 Civ 1307 (RJL). Solengo has even availed itself of this Court seeking damages under the Copyright Act for alleged dissemination over the internet of its investor prospectus. <u>See Solengo Capital Advisors ULC v. Dealbreaker et. al.</u>, pending in S.D.N.Y., Index No. 1:07-cv-02657-DLC (Cote, J.). The complaint in that matter alleges that Solengo is "attempting to grow … a multi-billion dollar commodities investment vehicle." <u>See</u> Amended Complaint dated May 10, 2007 ¶ 12, <u>Solengo Capital Advisors ULC v. Dealbreaker et. al.</u>, Index No. 1:07-cv-02657-DLC. Hunter has even submitted a second declaration dated March 30, 2007 in that case. <u>See</u> Hunter Declaration, <u>Solengo Capital Advisors ULC v. Dealbreaker et. al.</u>, Index No. 1:07-cv-02657-DLC.

## <u>ARGUMENT</u>

When adjudicating a defendant's motion to dismiss a complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. Rule 12(b)(2), the Court must construe the pleadings and supporting documentation in the light most favorable to the plaintiff, and must resolve any

doubts in favor of the plaintiff.  Packer v. TDI Sys., Inc., 959 F. Supp. 192, 202-203 (S.D.N.Y. 1997).  While the plaintiff ultimately bears the burden of establishing jurisdiction over the defendant, the defendant's motion must be denied where the plaintiff makes a prima facie showing that facts supporting jurisdiction under the forum state's jurisdictional laws "may exist," and that the exercise of jurisdiction based on such facts would be compatible with Constitutional due process.  See PC Com, Inc. v. Proteton, Inc., 906 F. Supp. 894, 905 (S.D.N.Y. 1995).  In this case, jurisdiction over Hunter is permitted under both state and federal law, and Hunter's motion to dismiss for lack of personal jurisdiction should be denied.

I.   **SDCERA HAS MADE A PRIMA FACIE SHOWING THAT THIS COURT HAS PERSONAL JURISDICTION OVER HUNTER**

The District Court applies the jurisdictional law of the forum state to determine whether the plaintiff has made the requisite prima facie showing of personal jurisdiction over a non-resident defendant.  See PC Com, Inc., 906 F. Supp. at 904 (applying New York jurisdictional law to assess personal jurisdiction over defendant).  Prior to discovery, the question for the court is simply whether the plaintiff has pled allegations from which it can reasonably be concluded that facts "may exist" which will support the exercise of personal jurisdiction by the forum court. Packer, 959 F. Supp. at 202-203 (exercising personal jurisdiction where the facts alleged made a prima facie showing).  To withstand a motion to dismiss, the plaintiff need only show that facts unavailable to him may exist; plaintiff need not demonstrate the actual existence of such facts. PC Com, Inc., 906 F.Supp. at 906 (finding that nature of defendant's employment and source of revenue had yet to be determined prior to discovery and therefore case would proceed with plaintiff to prove each element to satisfy jurisdiction at trial post-discovery).  In assessing whether the requisite showing has been made, the Court is not limited to the facts pled in the complaint, but may also consider any additional facts pled in response to the Rule 12(b)(2)

motion.  S.E.C. v. Euro Sec. Fund, No. 98 Civ. 7347(DLC), 1999 WL 76801, at *2 (S.D.N.Y. Feb. 12, 1999).

> **A.      C.P.L.R. § 301 Permits the Exercise of General Jurisdiction Over Hunter.**

C.P.L.R. § 301 states that "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore."  "Presence" in New York at the time of the commencement of the action is one traditional basis for general jurisdiction recognized as coming within the ambit of § 301.  FCNB Spiegel Inc. v. Dimmick, 619 N.Y.S.2d 935, 937 (N.Y. Civ. Ct. 1995).  It is well established, however, that "presence" does not necessarily require "physical presence" in New York.  See Grosser v. Commodity Exch., Inc., 639 F. Supp. 1293, 1306 (S.D.N.Y. 1986).  Rather, New York courts have construed § 301 to mean that jurisdiction may be exercised over a non-domiciliary defendant based on "constructive presence."  FCNB Spiegel, 619 N.Y.S.2d at 937 (citing Tauza v. Susquehanna Coal, Co., 220 N.Y. 259, 267 (1917) (Cardozo, J.)).  A non-resident defendant is deemed to be constructively present in New York if he "is 'engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction."  Laufer v. Ostrow, 55 N.Y.2d 305, 309-310 (N.Y. 1982) (internal quotations and citations omitted).  Where a defendant is constructively present in New York, he is "subject to general, in personam jurisdiction in New York, even over causes of action having no New York nexus."  FCNB Spiegel, 619 N.Y.S.2d at 937 (citing Bryant v. Finnish Nat'l Airline, 15 N.Y.2d 426, 431, 208 N.E.2d 439, 441-42 (N.Y. 1965)).  General jurisdiction exists where the non-domiciliary has engaged in a continuous and systematic course of business within New York with "a fair measure of permanence and continuity," such that its contacts "make it reasonable and just according to 'traditional notions of fair play and substantial justice' that it be required to defend the action here.  Id. at 309-310

(quoting Tauza, 220 N.Y. at 267 (1917) (Cardozo, J.), and Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  In determining whether the defendant has the requisite level of contact with the state, "courts should assess the defendant's contacts as a whole."  Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 570 (2d Cir. 1996) (noting that "[t]here is no talismanic significance to any one contact or set of contacts that a defendant may have with a forum state").

Hunter's contacts with New York are numerous and varied such that he may fairly be said to have been "constructively present" in New York with a "fair measure of permanence and continuity" for some time.  First and foremost, the Complaint alleges that for much of the past decade (including 2004 through 2006, the years of his employment by Advisors), Hunter consistently and regularly engaged in hundreds of millions of dollars of commodity trading activity on energy markets located in New York.  Compl. ¶ 28.  Hunter cannot defeat jurisdiction simply because he engaged in the trades at issue in this case as an employee of or even on behalf of Advisors.  See Hunter Mem. at p. 4.  As alleged in the Complaint, Hunter derived direct, personal, pecuniary benefit from each and every trade he executed ostensibly on Advisors' behalf.  Compl. at ¶ 57 (part of Hunter's compensation was that he received 15% of the gains made through his trades).  Each time Hunter executed a trade, therefore, he was doing so 85 percent on behalf of Advisors, but also 15 percent on his own behalf.  In other words, Hunter was doing business as an individual on behalf of himself at the same time he was doing New York trading on behalf of Advisors.  See Gregoris Motors v. Nissan Motor Corp. in USA et. al., 630 F.Supp. 902, 914 (E.D.N.Y. 1986) (where a corporate employee acts in his personal interest, he is individually liable and subject to personal jurisdiction in the state of his action).

This fact distinguishes Hunter from the defendant in <u>Laufer</u>, who, as the Court noted, was at all times acting solely on behalf of the corporation.  <u>Laufer</u>, 55 N.Y.2d at 313.  Hunter was trading on his own behalf, as well as Advisors, and he chose to purposefully avail himself of, among other markets, the NYMEX commodities exchange.  Moreover, Hunter is not simply an innocent employee being dragged into court by virtue of his employer's contacts alone; rather, Hunter is alleged to have participated in tortious conduct himself alongside his employer, thus allowing for the exercise of jurisdiction over him, individually.  <u>See</u> <u>Kreutter v. McFadden Oil Corp.</u>, 71 N.Y.2d 460, 470 (1988) ("corporate employee who knowingly contributed to the wrong" may be subject to jurisdiction based on corporation's contacts with the forum).  Consequently, the exercise of jurisdiction over Hunter based solely upon his trading behavior would not offend traditional notions of fair play and substantial justice.  <u>See</u> <u>ABCKO Indus. Inc. v. Lennon</u>, 377 N.Y.S.2d 362 (N.Y. Sup. Ct. 1975) (jurisdiction exercised over English citizen who lacked continuous physical presence in New York, but who derived substantial income from business activities conducted on his behalf in New York), <u>see</u> <u>also</u>, <u>S.E.C. v. Euro Sec. Fund</u>, 1999 WL 76801, at *3 (finding that a foreign individual making substantial purchases on a New York exchange should reasonably anticipate being haled into an American court).

While Hunter's trading activities while employed by Advisors are alone sufficient to allow for the Court to exercise personal jurisdiction, Hunter's business contacts with New York do not stop there.  Since leaving Amaranth in late 2006, Hunter's business activities in New York have continued as he has recently been in the process of starting up another hedge fund, Solengo, through which he has been trading or will continue to trade in the New York energy

markets.[2]  He has also actively marketed Solengo in New York to New York residents (both individuals and business entities) through, on information and belief,  telephone calls, email messages, text messages, and the dissemination of marketing materials including prospectuses.

Moreover, available records indicate that Hunter maintains substantial bank accounts in and regularly travels to New York for both personal and business reasons.  Hunter has at least three bank accounts located in New York, maintained in his name, with over two million dollars of total deposits as of August 1, 2007.  Hunter has also been affiliated with and used as late as June 2007, a residence located at 60 Walnut Lane, Manhasset, New York.  Hunter also owned or leased residential property in New York City at 23 West 70th Street from approximately May 2001 through February 2005.

Contacts establishing constructive presence in New York have also been deemed to include the presence of individuals within the state that promote the interests of the non-domiciliary.  See Schottenstein v. Schottenstein, No. 04 Civ. 5851(SAS), 2004 WL 2534155 at *9 (S.D.N.Y. 2004) (presence of individuals permanently located in New York promoting interests of non-domiciliary defendant is factor weighing in favor of exercising general jurisdiction).  Hunter has such individuals in New York promoting his interests, namely, counsel he has retained to advance his personal and business interests.  See Motown Record Co., L.P. v. iMesh.Com, Inc., No. 03 Civ. 7339(PKC), 2004 WL 503720, at *4 (S.D.N.Y. March 12, 2004)

_____

[2] Absent discovery, SDCERA cannot be sure whether or not Hunter has begun such trading behavior or other business activities directed at or within the State of New York.  Nevertheless, Hunter's intention to engage in such activities is confirmed by the initial solicitation materials he released earlier this year advertising the creation of Solengo, and thus SDCERA reasonably believes that Hunter continues to engage in business activities in the State of New York, and that discovery may lead to facts confirming this suspicion. See http://www.dealbreaker.com/2007/03/solengo_capital_is_born.php.

(non-resident's retention of New York counsel is a relevant factor that weighs in favor of exercise of general jurisdiction).  Hunter has retained counsel to advance his business interests in New York – not only in defense of this lawsuit,[3] but also to bring suit on his behalf as a plaintiff in a suit filed in New York Supreme Court, New York County, against his former New York City employer, Deutsche Bank.  See Hunter v. Deutsche Bank, pending New York Supreme Court New York County, Index No. 602791/2004.   At Hunter's direction, Hunter's new hedge fund, Solengo, has also retained the same New York counsel and commenced an action as a plaintiff in the Southern District of New York.   See Solengo Capital Advisors ULC v. Dealbreaker, pending in S.D.N.Y., Index No. 1:07-cv-02657-DLC.

Hunter thus has maintained such continuous, regular and systematic contacts with the State of New York on both personal and business levels that he should be deemed to be constructively present in the State.   Consequently, the Court may exercise general personal jurisdiction over Hunter pursuant to C.P.L.R. § 301.

**B.    Hunter's Trading Practices on the NYMEX Subject Him to "Long Arm" Personal Jurisdiction in New York under C.P.L.R. § 302(a).[4]**

Hunter is also subject to personal jurisdiction under New York's "long arm" statute, C.P.L.R. § 302, since even if he is deemed to lack ongoing and pervasive contact with New

---

[3] Hunter is also a defendant in and has retained New York counsel with respect to at least one other lawsuit arising from the transactions at issue in this case. See U.S. Commodity Futures Trading Commission v. Amaranth Advisors, L.L.C., Amaranth Advisors (Calgary) ULC, and Brian Hunter, pending Southern District of New York, Case No. 07 Civ 6682 (Chin, J.).

[4] Although C.P.L.R. § 302 was not cited as a possible basis for jurisdiction in the Complaint, it should still be considered by the Court in determining whether jurisdiction exists over Hunter. See CIT, Inc. v. 170 Willow St. Assocs., No. 93 Civ. 1201 CSH, 1997 WL 528163, at *4 (S.D.N.Y. Aug. 26, 1997) (even where particular jurisdictional statute is not cited, courts will look to the allegations of the pleading to determine whether jurisdiction under that statute has been pled);  Curley v. Brignoli, Curley & Roberts Assocs., 915 F.2d 81, 84 (2d Cir.1990), cert. denied, 499 U.S. 955, 111 S.Ct. 1430, 113 L.Ed.2d 484 (1991) (same).

York, he certainly directed the particular conduct alleged in SDCERA's Complaint towards this State.   C.P.L.R. § 302(a)(1) provides a basis for jurisdiction over a non-domiciliary who "transacts any business" within New York or who contracts to supply goods or services in New York.   Under C.P.L.R. § 302(a), the court must find "purposeful activities" by the non-resident defendant and the plaintiff must show that the purposeful activities "bear a substantial relationship to the transaction out of which the instant cause of action arose."   McGowan v. Smith, 52 N.Y.2d 268 (1981) (jurisdiction may be asserted against an agent who on behalf of a principal transacts business within the state).   Hunter has engaged in numerous activities with respect to the subject matter of SDCERA's suit by which the Court can exercise long arm jurisdiction over him.

Hunter is incorrect that his trading activity on the NYMEX exchange, in particular, does not subject him to personal jurisdiction under C.P.L.R. § 302(a) for "transacting business" in New York.   See Hunter Mem. at pp. 5-8.   Hunter concedes that some[5] of the trades on which SDCERA's gross negligence and aiding and abetting breach of fiduciary duty claims are based took place on the NYMEX exchange in New York.   See Hunter Mem. at p. 6.   He argues, however, that long arm jurisdiction cannot be predicated on his NYMEX trades because no individual NYMEX trade is alleged to have been harmful to SDCERA.   Id.   The gravamen of SDCERA's claims, however, is that Hunter's entire trading strategy was reckless and grossly negligent. Compl. at ¶¶ 63, 84-90, 130-132.   These allegations necessarily include each and

---

[5] In truth, Hunter's trades on NYMEX were so voluminous that NYMEX instructed Hunter to reduce his positions.  Compl. ¶¶ 21, 59, and 83.  In still another New York lawsuit arising out of these NYMEX trades, it is alleged that Hunter did not reduce his positions; instead, he transferred some of his positions to ICE, another exchange, in order to mask his trades from regulatory scrutiny.  See Complaint dated July 12, 2007 ¶¶ 48-49, Calle Gracey v. Amaranth Advisors, LLC et. al., pending S.D.N.Y., Index No. 07-cv-06377-SAS (Scheindlin, J.).

every NYMEX trade he executed, since each such trade was part of the larger strategy alleged in the Complaint to have been reckless.  Moreover, SDCERA alleges that one aspect of this overall reckless and grossly negligent strategy was Hunter's defrauding of the NYMEX itself when he ignored NYMEX's directive to reduce Advisors' total natural gas positions and instead shifted some of his trades to the unmonitored ICE exchange and OTC market. [6]  Compl. at ¶ 83.  The Complaint is thus quite specific that the injuries SDCERA suffered from Hunter's gross negligence and aiding and abetting of the breach of fiduciary duties arose from conduct he purposefully directed at the State of New York.  77738 Ontario Ltd. v. Lencore Acoustics Corp., 142 F. Supp. 2d 309, 319 (E.D.N.Y. 2001) (an out-of-state defendant may be subject to personal jurisdiction under § 302(a) if acting pursuant to a conspiracy).

Nothing in C.P.L.R. § 302(a) defines "arising from" in the hyper-limited manner Hunter urges the Court to adopt, and it is telling that he cites not a single case applying his interpretation either.  See Hunter Mem. at p. 6.  New York Courts merely require that the complained of activities "bear a substantial relationship to the transaction out of which the instant cause of action [arises]."  McGowan, 52 N.Y.2d at 268.  Even if other specific trades on the ICE or OTC market also caused SDCERA harm, SDCERA has alleged that the NYMEX trades were part of the same reckless scheme, and are thus sufficiently related to the scheme for purposes of § 302(a).  In any event, even if credence were given to Hunter's unsupported  interpretation of §302(a), it would still be insufficient to justify dismissal, since SDCERA has not had the opportunity to take discovery and tie specific trades to its damages as Hunter asserts must be

_____

[6] Even the ICE maintains offices in New York, meaning that the connection between Hunter's non-NYMEX trades and New York is not as tenuous as Hunter would have the Court believe. See https://www.theice.com/offices.jhtml.

done.  See PC Com, Inc., 906 F.Supp. at 906 (exercising jurisdiction where facts "may exist" and permitting plaintiff to develop such facts as necessary through discovery prior to trial).

## II.   THE EXERCISE OF JURISDICTION OVER HUNTER DOES NOT VIOLATE FEDERAL PRINCIPLES OF DUE PROCESS

With at least two established bases under New York State law by which the Court may exercise jurisdiction over Hunter, Hunter's motion must be denied because such exercise of jurisdiction would be consistent with Constitutional due process.  In the seminal case of Int'l Shoe, 326 U.S. at 316, the Supreme Court held that due process requires that before personal jurisdiction may be exercised over a non-resident defendant, it must be shown that the defendant possesses "certain minimum contacts [with the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice."  Such contacts are established where the defendant "purposefully avails itself of the privilege of conducting activities within the forum state" such that it "should reasonably anticipate being haled into court there."  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980), see also Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 112 (1987) ("Minimum contacts must come about by 'an action of the defendant purposefully directed toward the forum State."). It is beyond dispute that Hunter has such minimum contacts meaning that this Court may exercise personal jurisdiction over him consistent with Constitutional due process.

### A.   Hunter has Minimum Contacts with New York

As noted, the Complaint alleges that each of the NYMEX trades forming part of the scheme alleged to have injured SDCERA were executed at Hunter's express direction.  Hunter's contact with New York was thus deliberate and of his own choosing.  As also noted, Hunter also executed trades on various other exchanges, so his choice of the NYMEX exchange reflects a purposeful availment of the privilege of conducting business in New York State.

12

The fact that the Complaint does not allege travel by Hunter to New York "to commit any act that damaged the Plaintiff" is immaterial and has no bearing on whether Hunter possesses the requisite "minimum contacts" with the forum state.  Hunter Mem. at p. 9.  As previously noted, physical presence in New York is not a requirement for the exercise of personal jurisdiction.[7] See Grosser, 639 F.Supp. at 1306.  Moreover, personal jurisdiction can be exercised on the basis of a non-resident defendant's engagement of an agent who transacts business on his behalf. Packer, 959 F. Supp. at 199.  In particular, jurisdiction may be exercised over the non-resident defendant so long as the "the [purported agent] engaged in purposeful activities in this State in relation to [the transaction complained of] for the benefit of and with the knowledge and consent of the defendants and that [the defendants] exercised some control over [the purported agent] in the matter."  Id.  at 201 (citing Kreutter, 71 N.Y.2d at 467).  Hunter does not and cannot deny that he purposefully caused trades to be executed by agents acting at his direction and on his and Advisors' behalf on the NYMEX.  Although at this stage of its case, SDCERA need not prove such allegations, the United States Commodity Futures Trading Commission ("CFTC") has already done so for SDCERA by including in its complaint against Hunter copies of NYMEX order tickets representing trades phoned in to NYMEX at Hunter's direction.  See Complaint filed in U.S. Commodity Futures Trading Comm'n v. Amaranth Advisors, L.L.C., Amaranth Advisors (Calgary) ULC, and Brian Hunter, pending Southern District of New York, Case No.

---

[7] Even so, Hunter may well have traveled to New York in connection with trades made on behalf of the Fund or other Amaranth activities which would only be uncovered through the discovery process.  There are some public reports that Amaranth cleared its energy trades through JPMorgan Chase in New York.  See United States Senate Permanent Subcommittee on Investigations: Committee on Homeland Security and Governmental Affairs, Excessive Speculation in the Natural Gas Market, Staff Report, June 25, 2007 and July 9, 2007, pp. 53 and 57.

07 Civ 6682, attached as Exhibit M to the Burgos Aff.  Such a presence in New York would certainly subject Hunter to jurisdiction in New York under both C.P.L.R. §§ 301 and 302 since an agent's activities are attributable to its principal.  Packer, 959 F. Supp. at 199.

Moreover, even if Hunter's trades are principally viewed as contacts by Advisors, the fact that Hunter is alleged to have played a key role in the scheme at the center of SDCERA's complaint means that he cannot escape the Court's jurisdiction by hiding behind his employer. See Global Intellicom, Inc. v. Thomson Kernaghan & Co., No. 99 Civ. 342(DLC), 1999 WL 544708, at *19 (S.D.N.Y. July 27, 1999) (Cote, J.) (holding that a Canadian defendant acting on behalf of his employer when he "played a key role in the" securities fraud alleged in the Complaint was not an innocent and thus had sufficient minimum contacts with New York to permit the court's exercise of personal jurisdiction).  The Complaint alleges that Hunter was Advisors' portfolio manager for energy trading, and that each of the trades alleged to have been part of the scheme that ultimately brought down the Fund were done under Hunter's supervision and at his direction.  Compl. ¶¶ 47, 56-57.  While these trades alone constitute purposeful and culpable availment of New York, Hunter most certainly cannot claim to have not  "reasonably [expected] to be haled into court" in relation to these trades after NYMEX indicated that they were being conducted in violation of federal laws applicable to trades taking place on that New York exchange.[8]  World-Wide Volkswagen Corp., 444 U.S. at 297 (1980).

---

[8] Indeed, Hunter has already been haled into the New York courts by the CFTC to explain his trading activity.  See U.S. Commodity Futures Trading Commission v. Amaranth Advisors, L.L.C., Amaranth Advisors (Calgary) ULC, and Brian Hunter, pending Southern District of New York, Case No. 07 Civ 6682 (Chin, J.).  And, as noted above, Hunter has "haled" others into New York courts on at least two occasions.

**B.     It Would Be Reasonable and Fair to Exercise Jurisdiction Over
Hunter Because Traditional Notions of Fair Play and Substantial
Justice Have Been Met**

The U.S. Supreme Court has held that a court must evaluate five factors as part of the

reasonableness analysis of whether it would be fair to exercise jurisdiction over a non-resident

defendant:

     a.   the burden that the exercise of jurisdiction will impose on the defendant;
     b.   the interests of the forum state in adjudicating the case;
     c.   the plaintiff's interest in obtaining convenient and effective relief;
     d.   the interstate judicial system's interest in obtaining the most efficient resolution of
        the controversy; and
     e.   the shared interest of the states in furthering substantive social policies.

Asahi, 480 U.S. at 113-14.

**1.     The exercise of jurisdiction in this case would impose only
minimal burdens on Hunter.**

Contrary to Hunter's suggestion, the "several thousand miles" separating Calgary,

Canada and New York would impose no real burden on him in relation to this suit.  Just as he did

when he wanted to trade on the NYMEX from Calgary, or sue someone in New York, Hunter

has retained an agent (his attorneys) in New York to represent him with respect to this suit.

Consequently, there will be little need for Hunter's physical presence in New York over the

course of this case.[9]  Moreover, as a result of the trades alleged in the Complaint, Hunter derived

substantial personal financial benefit, which Courts have long recognized eliminates any real

burden that a non-resident might otherwise face from distant litigation.  Wiwa v. Royal Dutch

Petroleum Co., 226 F.3d 88, 99 (2d Cir. 2000)  ("litigation in New York City would not

---

[9] Hunter's allegations of the "burden" of litigating from Calgary are also belied by the fact he is
at present a plaintiff (or the managing member of a plaintiff) in at least two suits in New York.
See Solengo Capital Advisors ULC v. Dealbreaker , pending in S.D.N.Y., Index No. 1:07-cv-
02657-DLC, and Hunter v. Deutsche Bank, pending New York Supreme Court New York
County, Index No. 602791/2004.

represent any great inconvenience to the defendants …[where they] control a vast, wealthy, and far-flung business…").  Finally, the "realities of modern transportation and communication, as well as the nature of civil litigation... serve to reduce the burdens of litigating in a distant forum." Donoghue v. Dicut, Inc., No. 01 Civ. 10194(NRB), 2002 WL 1728539, at *2 (S.D.N.Y. July 24, 2002) (citing S.E.C. v. Softpoint, Inc., No. 95 Civ. 2951 GEL, 2001 WL 43611, at *6 (S.D.N.Y. Jan. 18, 2001)).  The exercise of personal jurisdiction in this case over Hunter would thus impose no real burdens on him.

**2.    New York has significant interests in this case.**

It is indisputable that New York has a strong interest in protecting the integrity of New York-based financial markets, and in particular, in ensuring that these markets are not manipulated as the Complaint alleges Hunter to have done with respect to the NYMEX.   Hunter asserts that "there is very little connection between New York and the case against Brian Hunter individually with respect to this matter."  Hunter Mem. at p. 10.  This suggestion is belied by the fact that, as the Complaint alleges, it was Hunter who purposefully availed himself of the opportunity to derive huge personal profits from deceptive and reckless trading on the New York-based NYMEX.  Moreover, SDCERA is not the only party who apparently believes there is a significant connection between Hunter and New York:  the CFTC has also brought its suit against Hunter in the Southern District of New York.[10]   See U.S. Commodity Futures Trading Comm'n v. Amaranth Advisors, L.L.C., Amaranth Advisors (Calgary) ULC and Brian Hunter, 07 Civ 6682, pending in the Southern District of New York (Chin, J.).  Thus, whether or not the "NYMEX cares one way or the other about the outcome of the instant action," Hunter Mem. at p.

---

[10] Pursuant to the Commodity Exchange Act, the CFTC has regulatory authority over futures contracts markets.  7 U.S.C. §2.  The CFTC regulates and monitors the trading activity on NYMEX, a New York exchange.

11, the CFTC certainly cares about the outcome of its own action, and its choice of the forum in which to seek to hold Hunter liable for the same conduct alleged in SDCERA's Complaint cannot be ignored. [11]   The connections between Hunter and New York are thus quite persistent, and this State has a strong interest in the outcome of this suit.

### 3.   SDCERA must be allowed to proceed against Hunter if it is to be made whole for the injuries it suffered due to his conduct.

The collapse of the fund decimated Advisors' assets, leaving insufficient funds available to give SDCERA back the capital which it invested in the Fund and to which it is rightly entitled. Compl. at ¶ 94.  Hunter, however, is alleged to have received many millions of dollars as a direct result of the trading which wiped out SDCERA's investment and the Fund's ability to pay it back in full.  It even appears that some of these millions may well be in Hunter's New York bank accounts today.  While Hunter is correct that SDCERA has received some portion of its capital investment back, if SDCERA were to prevail in this matter, it would be manifestly unjust to allow Hunter to retain these ill-gotten gains while leaving SDCERA less than whole as a result of Advisors not having sufficient assets to compensate SDCERA for its losses.  Hunter's inclusion as a defendant is thus necessary to ensure that any judgment will be truly enforceable. [12]

---

[11] Hunter mistakenly argues that 15 U.S.C. § 78aa is not a basis for jurisdiction.  SDCERA has not alleged that Hunter violated the federal securities laws in the Complaint.  Compl. passim.  Of course, if SDCERA had done so, 15 U.S.C. § 78aa would be another basis for asserting jurisdiction over Hunter.

[12] Hunter's concern for SDCERA's convenience as a California plaintiff litigating in a New York court is touching, but of no matter.  Hunter Mem. at p. 11.  Plaintiffs have long had the right to choose the forum for their actions, and SDCERA chose New York because of its overriding interest in this litigation and convenient proximity to the markets at issue and the rest of the Defendants.

### 4. Efficient resolution of the subject matter of SDCERA's suit can only be accomplished by including Hunter in this proceeding.

Hunter's suggestion that the case be litigated separately to avoid bogging down the court with "collateral issues that are likely to come up if the Plaintiff persists in trying to hold Hunter liable" is preposterous, as well as self-serving.  Hunter Mem. at p. 11.  The claims against Hunter involve the same set of facts as the claims against the other Defendants.  There is no reason to believe there is anything special as against Hunter that would confuse or bog down the rest of the case.  In fact, Hunter's trading activity will be highly scrutinized in this action and he would likely need to be called for depositions and other testimony regardless of his jurisdictional status.  Hunter completely ignores the fact that two separate proceedings, one for Hunter and another for the remaining Defendants, would be a waste of judicial resources because it would require trying the same basic facts and legal issues in two separate fora.

### 5. The shared interests of the States favor the Court's exercise of Jurisdiction over Hunter in this proceeding.

Hunter's naming of only New York and Connecticut as States with a potential interest in these proceedings overlooks the interest all States, together, have in ensuring that national and global commercial matters are swiftly and conclusively resolved.  Hunter Mem. at p. 12.  This suit involves limited liability companies created under Delaware law, based in Connecticut, with Canadian employees trading on New York markets with money provided, in part, by a California investor.  Because such arrangements are increasingly common in modern commerce, it behooves all States individually and together to have any dispute arising in such context adjudicated conclusively by one court in a single action, rather than risking the possibility of inconsistent judgments rendered by different courts over the same conduct.  Accordingly, there is

really no question that the exercise of jurisdiction over Hunter would be reasonable and consistent with Constitutional due process.  Asahi, 480 U.S. at 113-14.

## III.   AT A MINIMUM, SDCERA IS ENTITLED TO JURISDICTIONAL DISCOVERY TO SUPPORT THE THRESHOLD JURISDICTIONAL SHOWING IT HAS MADE.

District courts have considerable discretion in determining whether to permit jurisdictional discovery.  Ayyash v. Bank Al-Madina, 2006 WL 587342, No. 02 Civ. 9201, at *5 (S.D.N.Y. March 9, 2006) (holding that a sufficient showing toward establishing jurisdiction had been made and therefore granting jurisdictional discovery).  A district court will generally permit a plaintiff to conduct limited discovery where the plaintiff has made a threshold showing that there is some basis for the assertion of jurisdiction.  Id.  See also, In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003) (reversing dismissal for lack of jurisdiction where plaintiffs were not afforded an opportunity to engage in jurisdictional discovery); Strategem Dev. Corp. v. Heron Int'l N.V., 153 F.R.D. 535, 547-48 (S.D.N.Y. 1994) (jurisdictional discovery should be permitted where plaintiff has made a "sufficient start" toward establishing jurisdiction).

As described above, SDCERA has certainly demonstrated that Hunter is not unconnected to the State of New York.[13]  Thus, it has, at a minimum, made a sufficient showing that facts may exist that would demonstrate that Hunter is subject to the personal jurisdiction of this Court. Should the Court not find that these facts as alleged allow for its exercise of personal jurisdiction over Hunter, SDCERA should be given the opportunity to develop further jurisdictional evidence through discovery.  SDCERA submits that Hunter is, in fact, subject to the personal jurisdiction

---

[13] While the parties have discussed the possibility of a deposition of Hunter to explore jurisdictional questions, no agreement was reached.

of this court; however, should the Court find that it requires further information regarding Hunter's ties to New York to satisfy this inquiry, Plaintiff requests leave to conduct the necessary discovery to obtain such information.

## CONCLUSION

For the reasons set forth herein, Hunter's motion to dismiss on the grounds of lack of personal jurisdiction pursuant to Rule 12(b)(6) should be denied in its entirety.


Dated: New York, New York
           August 14, 2007

CROWELL & MORING LLP


/s/   Steven D. Greenblatt
William J. McSherry, Jr. (WM1194)
Steven D. Greenblatt (SG5105)
Christina N. Burgos (CB5579)
153 East 53rd Street
New York, New York 10022
Tel. No.:  212-223-4000
Fax No.:  212-223-4134

Attorneys for Plaintiff San Diego County
Employees Retirement Association
